**KIRBY McINERNEY LLP**

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.699.1194
www.kmllp.com

Of counsel
   Roger W. Kirby
   Alice McInerney

November 23, 2015

**VIA ECF**

The Honorable Paul A. Engelmayer
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

> Re:   *Shak et al. v. JP Morgan Chase & Co., et al.*, 15 Civ. 00992
>        *Wacker v. JP Morgan Chase & Co., et al.*, 15 Civ. 00994
>        *Grumet v. JP Morgan Chase & Co., et al.*, 15 Civ. 00995

Dear Judge Engelmayer:

We represent the Plaintiffs in the above-referenced related actions.[1]  We respectfully write pursuant to Rule 1(A) of Your Honor's Individual Practices to correct a factual point Defendants (hereinafter "JP Morgan") raised on rebuttal during the November 10, 2015 oral argument.  As discussed below, JP Morgan's factual error vitiates its argument that there are substitutes for the long-dated spreads that Plaintiffs allege were monopolized.

During the oral argument, Plaintiffs explained how in late 2010 and early 2011, JP Morgan, through trader Robert Gottlieb, built up a long position in certain long-dated silver futures spreads traded on the Commodity Exchange, Inc. ("COMEX") and monopolized and manipulated the long-dated spread market.[2]  The argument focused on the December 2014 leg of the spread contracts because it was in this contract that JP Morgan's exclusionary conduct and market power were most obvious.[3]

On rebuttal, the Court invited JP Morgan to "teach" the Court the "esoteric" market for silver futures spread contracts.[4]  JP Morgan then argued for the first time that the availability of other futures contracts near the December 2014 contract (*e.g.*, October and November 2014)[5]

---

[1] All capitalized terms not otherwise defined shall carry the meaning set forth in Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Complaints.  No. 15 Civ. 00992, ECF No. 28; No. 15 Civ. 00994, ECF No. 27; No. 15 Civ. 00995, ECF No. 26.

[2] *See generally* Nov. 10, 2015 Oral Argument Trs. ("Trs.") at 50-53.

[3] *See e.g.*, Grumet Compl. at ¶4, No. 15 Civ. 00995, ECF No. 13.

[4] *See* Trs. 54:12 ("Explain that. You know the market better"); Trs. 54:22 ("Teach me this market."); Trs. 55:2-3 ("Explain how that works.  I still don't understand the market."); *see also Gordon v. Hunt*, 98 F.R.D. 573, 579 (S.D.N.Y. 1983) (Lasker, D.J.) (describing the market for silver futures contracts as "esoteric").

[5] *See* Trs. 54:8-10 ("First of all, I think most importantly, there is nothing that plausibly alleges in the complaint that other nearby spreads still deferred November 2014, October 2014, aren't substitutes…").

Hon. Paul A. Engelmayer
November 23, 2015
Page 2

undermined Plaintiffs' position that JP Morgan had market power in a properly defined relevant market for these long-dated spreads. Previously, JP Morgan had argued that the relevant substitute to the long-dated spread market was the cash market.[6]

JP Morgan's point is factually impossible. The October and November 2014 calendar contracts could not be ready substitutes for the December 2014 contract because those contracts did not ever exist. According to the CME, "[t]rading [in silver futures] is conducted for delivery during the current calendar month; the next two calendar months; any January, March, May, and September falling within a 23-month period; and any July and December falling within a 60-month period beginning with the current month."[7] Thus, in late 2010 and early 2011 – the relevant period here – the only contracts in 2013 and 2014 were the July and December contracts. Because these long-dated spreads are measures of interest rate term structure,[8] which inherently reflect time value, there was no substitute for the December 2014 silver futures leg of the spread.

Moreover, JP Morgan's previous argument that the cash market is a valid substitute fails for the simple reason that Plaintiffs compared the behavior of the cash market (SIFO) with the futures spreads and found the markets to be completely disconnected during the relevant period.[9] This is consistent with the seminal case law on long-dated futures contracts, which holds that "the relevant supply and demand conditions for a future several months away from the delivery month are **the supply and demand on the Exchange** (*i.e.*, buyers and sellers)."[10]

Plaintiffs' allegations make clear that the prices for nearby silver futures spread contracts hinged on the prices of the long-dated December 2014 silver futures contract, and at that time there were few market participants beyond JP Morgan and Plaintiffs.[11] Because the silver futures spreads are calculated by taking the difference between silver futures settlement prices

---

[6] *See* No. 15 Civ. 00995, ECF No. 32 at 14.

[7] "Silver Futures Contract Specs", *available at*: http://www.cmegroup.com/trading/metals/precious/silver_contract_specifications.html.

[8] *See* Grumet Compl. at ¶30.

[9] *See generally id.* ¶¶100-187 (*e.g.*, ¶145 "Plaintiff's consulting expert also tested for "structural breaks" in the SIFO and silver futures spread relationship. The analysis found, first, that there are distinct structural breaks around the beginning of 2011 in the difference of silver future spreads and SIFO. . . . . [T]hat this phenomenon of structural breaks is not matched by the release of new information with the same size and significance is potentially a sign of silver futures settlements being manipulated.")

[10] *In re Henner*, 30 Agric. Dec. 1151 (C.F.T.C. 1971) (discussing artificial closing price that resulted when trader paid more than he had to, based on uneconomic bids and offers) (emphasis added) (*see* page 46 of the pdf version *available at* http://www.cftc.gov/idc/groups/public/@lrceacases/documents/ceacases/henner-may1969-320.pdf).

[11] *See e.g.*, Grumet Compl. at ¶3 ("These futures spreads, which hinged in large part on the December 2014 contract, were illiquid and susceptible to manipulation. . . . . There were only a few market participants willing to trade silver futures contracts in these deferred contracts.); ¶4 ("Plaintiff was one such "local", . . . JP Morgan held market power in these futures spreads through its dominant position in the illiquid forward silver futures contracts, especially the December 2014 contract."); ¶74 ("The long-dated December futures contracts were the edge of the accordion that caused the entire term structure of futures contract prices to move inward or outward, depending on JP Morgan's capricious pressure.").

Hon. Paul A. Engelmayer
November 23, 2015
Page 3

for futures contracts with different maturities,[12] JP Morgan's dominance of the settlement committee through, *inter alia*, spurious bids at the end of trading necessarily affected the prices of the entire silver term structure.[13]

Relatedly, JP Morgan's assertion on rebuttal that Plaintiffs' allegations relate only to a "liquidity issue" is reductive.[14]  All market squeezes and corners involve liquidity issues.  More relevant here is JP Morgan's demonstrated ability to control prices and to drive out competition.[15]  Plaintiffs' "allegations are neither bare nor conclusory" insofar as they constitute direct evidence of JP Morgan's intentional acquisition of monopoly in long-dated spreads.[16]

Based on the foregoing, Plaintiffs respectfully request that the Court disregard JP Morgan's so-called education and instead rely on Plaintiffs' well-pleaded allegations.

Respectfully submitted,

 /s/ *David E. Kovel*
David E. Kovel
KIRBY McINERNEY LLP
825 Third Avenue, 16th floor
New York, New York 10022
Telephone: (212) 371-6600
Email: dkovel@kmllp.com

*Counsel for Plaintiffs*

cc:      All Counsel of Record (by ECF)

---

[12] *See id.* at ¶¶30-33; *see also* "Metal Spreads: Silver Calendar Spreads", *available at*: http://www.cmegroup.com /confluence/display/EPICSANDBOX/Metals+Spreads#MetalsSpreads-SilverCalendarSpreads.

[13] *See e.g.*, Grumet Compl. ¶¶67, 74.

[14] *See* Trs. 55:16-18.

[15] *See In re Crude Oil Commodity Futures Litig.*, 913 F. Supp. 2d 41, 52 (S.D.N.Y. 2012) (Pauley, D.J.).

[16] *See id.*  Plaintiffs have alleged, **and can allege with even more specificity if it is required**, that JP Morgan put false bids in at the close of trade to dominate the spreads at settlement on a nearly daily basis during the first few months of 2011.  However, because the exchange is meant to be anonymous it is impossible for Plaintiffs to know JP Morgan's exact positions in these spreads.  *See* Trs. 51:23-52:3; *see also In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 962 F. Supp. 2d 606, 624 n. 23 (S.D.N.Y. 2013).   Plaintiffs have inferred Defendants' positions through their own activities and eyewitness accounts.  For this reason, it would be premature to say that Defendants ***did not*** have market power in the December 2014 futures on days in which Plaintiffs' transactions did not correspond with traditional market power percentages.  *See, e.g.*, Grumet Compl. at ¶61 (showing that on January 25, 2011 Mr. Wacker's trades with Defendants constituted only 18.9% of the volume on that day).