# SULLIVAN & CROMWELL LLP

TELEPHONE: 1-202-956-7500
FACSIMILE: 1-202-293-6330
WWW.SULLCROM.COM

*1700 New York Avenue, N.W.*
*Suite 700*
*Washington, D.C. 20006-5215*

NEW YORK • LOS ANGELES • PALO ALTO
FRANKFURT • LONDON • PARIS

April 5, 2018

By ECF

Honorable Paul A. Engelmayer,
   Thurgood Marshall United States Courthouse,
     40 Foley Square,
       New York, New York 10007-1312.

        Re:   *Shak et al.* v. *JPMorgan Chase & Co. et al.*, Nos. 15-cv-992, -994, -995

Dear Judge Engelmayer:

      On behalf of defendants in these actions, I write pursuant to Rule 3.H of Your Honor's Individual Rules and Practices in Civil Cases and the Court's December 13, 2017 Order (*Shak*, ECF No. 124) to respectfully request that the April 20, 2018 case management conference serve as a pre-motion conference concerning defendants' anticipated motion for summary judgment and related motions to exclude certain testimony from plaintiffs' designated trial experts.[1] As discovery has made clear, plaintiffs lack admissible evidence to prove any elements of monopolization claims under 15 U.S.C. § 2 or New York G.B.L. § 340.

**I.    There Is No Evidence of a Market for "Long-Dated Silver Futures."**

      Plaintiffs bear the burden to prove a "relevant [antitrust] market," which is a market that includes "all products reasonably interchangeable by consumers for the same purposes." *City of New York* v. *Grp. Health Inc.*, 649 F.3d 151, 155 (2d Cir. 2011). They cannot do so. Plaintiffs allege a market for "long dated silver futures contracts, including spreads" where "[l]ong dated is defined as at least one year from spot." (Ex. A (Pls.' Resp. to Interrogatory No. 10) at 7.) However, the record is clear that, at the very least, both "short-dated silver futures contracts" (those with an expiry less than a year from spot) and OTC silver forwards are reasonably interchangeable with "long-dated silver futures contracts." ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Plaintiffs' principal attempted defense of their market definition is ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ that is unreliable and accordingly inadmissible. Fed. R. Evid. 702; *Daubert* v. *Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). For example, with minor sensitivity testing, such as including plaintiffs' entire proposed market instead one cherry-picked combination of futures contracts, Dr. Santesteban's results reverse, lose statistical significance, or both. (Ex. D (Asker Report) ¶ 230.) ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[1] At this time defendants seek to exclude only expert testimony directly relevant to their summary judgment motion; defendants would move to exclude additional expert testimony should the case proceed.

███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

## II.  There Is No Evidence that JPMorgan Had Market Power in the "Market."

Plaintiffs also must show that JPMorgan possessed market power, which is "the power to control prices or exclude competition." *Tops Markets, Inc.* v. *Quality Markets, Inc.*, 142 F.3d 90, 97-98 (2d Cir. 1998). Plaintiffs once again rely on Dr. Santesteban, whose opinions lack the indicia of reliability necessary for admission as expert evidence. Specifically, ████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

## III.  There Is No Evidence of Willful Monopoly Acquisition or Maintenance.

To withstand summary judgment, plaintiffs must proffer evidence showing that JPMorgan engaged in conduct "without a legitimate business purpose" that "makes sense only because it eliminates competition." *In re Adderall XR Antitrust Litig.*, 754 F.3d 128, 133 (2d Cir. 2014). In response, plaintiffs contend that JPMorgan tried to drive them out of the "market" by suppressing settlements for long-dated silver futures—*i.e.*, the reference prices used for daily mark-to-market purposes. JPMorgan supposedly did so in two ways. *First*, plaintiffs argue that JPMorgan "harangued" COMEX staff to set settlements at JPMorgan's desired levels, but as plaintiffs acknowledged, COMEX rules call for participant input into settlements, and plaintiffs were doing the same thing. ████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
██████████████████████████████████████████████ In any event, plaintiffs also cannot show that settlement prices were ever artificial, let alone in JPMorgan's favor. ████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████████████
███████████████████████████

*Second*, plaintiffs contend that on unspecified days in January 2011, JPMorgan entered large sell orders of 500 contracts shortly before the close solely to affect settlement prices. However, after voluminous discovery, including records of all electronic COMEX orders and thousands of hours of audio from the COMEX pit, plaintiffs have not identified a single large sell order prior to the close by JPMorgan (or any other anticompetitive conduct). Moreover, even if JPMorgan had entered 500 lot orders, there would be nothing wrong with that—JPMorgan was serving clients by buying forward silver OTC, and needed to hedge OTC positions by selling COMEX futures. ████████████
███████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████

The lack of any evidence of anticompetitive conduct is unsurprising, because JPMorgan had no incentive to exclude plaintiffs from any long-dated silver futures "market." As an

OTC market maker for silver, JPMorgan acquired long silver risk from OTC customers and hedged that risk OTC or by selling COMEX futures to counterparties such as plaintiffs.

### IV.    Plaintiffs Lack Antitrust Standing.

To determine whether a plaintiff is an "efficient enforcer" of the antitrust laws, courts must "examine primarily the following factors: (1) the directness or indirectness of the asserted injury; (2) the existence of an identifiable class of persons whose self-interest would normally motivate them to vindicate the public interest in antitrust enforcement; (3) the speculativeness of the alleged injury; and (4) the difficulty of identifying damages and apportioning them among direct and indirect victims so as to avoid duplicative recoveries." *Gatt Commc'ns, Inc.* v. *PMC Assocs., L.L.C.*, 711 F.3d 68, 78 (2d Cir. 2013). Plaintiffs fail on each step. *First*, plaintiffs' claimed injuries are remote because they result not from artificial settlement prices, but (i) from increasing margin requirements that JPMorgan had nothing to do with, or (ii) from liquidating at market prices (which are distinct from settlement prices) not shown to be artificial. *Second*, if JPMorgan was artificially suppressing the price of silver futures, plaintiffs, as net buyers of futures, would have benefitted from reduced prices; the class of persons actually harmed, if any, would be net sellers who could not compete. *Third*, plaintiffs' alleged losses are impossibly speculative given their theory that the positions would have been profitable if held to maturity. *Fourth*, plaintiffs' theory of damages is based largely on transactions through COMEX with third parties, which raises the specter of duplicative and indirect damages.

### V.    There Is No Admissible Evidence of Injury-in-Fact or Damages.

An antitrust plaintiff must show both antitrust "injury-in-fact," *Arista Records LLC* v. *Lime Grp. LLC*, 532 F. Supp. 2d 556, 568 (S.D.N.Y. 2007), and "sufficient facts to support a determination of monetary damages to compensate for the injury," *GAF Corp.* v. *Eastman Kodak Co.*, 519 F. Supp. 1203, 1213 (S.D.N.Y. 1981). Plaintiffs have done neither. Plaintiffs estimate their damages by comparing the prices at which they liquidated to where they argue prices should have been in a competitive market. However, to show "but-for" prices, plaintiffs depend entirely on an unreliable pricing model of Dr. Martin Evans—

*Shak* v. *JPMorgan Chase & Co.*, 156 F. Supp. 3d 462, 479 (S.D.N.Y. 2016).

### VI.    There is No Evidence Supporting Claims Against Three Defendants.

In contrast, there is no evidence in the record of any conduct (lawful or otherwise) by defendants J.P. Morgan Clearing Corp., J.P. Morgan Securities LLC or J.P. Morgan Futures, Inc. Accordingly, claims against those entities must be dismissed.

Hon. Paul A. Engelmayer -4-

                                              Respectfully submitted,

                                              /s/ Amanda F. Davidoff
                                              Amanda F. Davidoff

cc: All counsel of record (via ECF)