# KIRBY McINERNEY LLP

825 Third Avenue
New York, NY 10022
212.371.6600
Fax. 212.751.2540
WWW.KMLLP.COM
Of counsel
  Roger W. Kirby
  Alice McInerney

November 14, 2018

**VIA ECF**
Honorable Paul A. Engelmayer
United States District Judge
United States Courthouse
40 Foley Square
New York, New York 10007

    Re:    *Shak et al. v. JPMorgan Chase & Co., et al.*, No. 15 Civ. 992 (PAE); *Wacker v. JPMorgan Chase & Co., et al.*, No. 15 Civ. 994 (PAE); and *Grumet v. JPMorgan Chase & Co., et al.*, No. 15 Civ. 995 (PAE)

Dear Judge Engelmayer:

We represent Plaintiffs[1] in the above-referenced actions and write with respect to the October 9, 2018 guilty plea of John Edmonds, recently unsealed on Tuesday, November 6, 2018. *See* U.S. Department of Justice ("DOJ") Plea Agreement ("Plea Agreement"), filed October 9, 2018, attached as Exhibit A.[2] Mr. Edmonds was a New York-based precious metals trader at JP Morgan and was deposed in this matter on November 14, 2017. Plaintiffs respectfully request that Your Honor permit Plaintiffs to move to re-open limited discovery to re-depose Mr. Edmonds and his immediate supervisors and mentors, Michael Nowak and Robert Gottlieb.[3] This testimony will be highly relevant for the liability portion of the case and also for determinations of the pending Motions to Exclude because the testimony will: (1) demonstrate a pattern and practice of intimidation that is consistent with Plaintiffs' experts' view that JP Morgan created barriers to entry in the thinly traded long-dated silver futures spreads; (2) contradict the testimony and opinions of JP Morgan's experts and witnesses that the company's long-dated selling during January 2011 could have been endogenous hedging (despite the fact that there was no long-dated hedging at the time);[4] and (3) also contradict JP Morgan's view that conduct of the sort alleged, qua manipulation, would be adverse to its economic interest in having counterparties.

---

[1] "Plaintiffs" include Daniel Shak; SHK Diversified, LLC; Thomas Wacker; and Mark Grumet.

[2] Courts may take judicial notice of adjudicative facts. Fed. R. Evid. 201(b).

[3] Robert Gottlieb was deposed in this matter on December 8, 2017. *See* ECF No. 164 at Ex. 22. Michael Nowak was deposed on October 24, 2017 (as a 30(b)(6) designee on behalf of J. P. Morgan) and on October 25, 2017 (as a fact witness). *See* ECF No. 164 at Exs. 19, 35. On March 1, 2018, J.P. Morgan also designated Mr. Nowak as a non-retained expert witness not required to provide a written report. *See* Ex. C.

[4] ECF No. 164 at Ex. 27 at 244:3-13 (Shak testifying that "[t]he offering 500 and offering 25 didn't seem at all to me like they were hedging, you know, SIFO, you know. It was the end of the – I'd understand if they came in first thing in the morning to hedge the over-the-counter stuff they did at night, but that doesn't make any sense why they would

**Kirby McInerney LLP**                                                                                                         Page 2
November 14, 2018

As part of Mr. Edmonds' guilty plea, which allows for ongoing cooperation, he admitted:

> From no later than 2009 until no earlier than 2015, **the defendant conspired with other precious metals traders at the Bank** to engage in wire fraud, commodities fraud, commodities price manipulation, and spoofing, **all for the common benefit of the traders and the Bank itself**…. The defendant learned this deceptive trading **strategy from more senior traders at the Bank**, and he personally deployed this strategy hundreds of times **with the knowledge and consent of his immediate supervisors**.

Ex. A at 10. As a result, JP Morgan "**deceive(d) other market participants**" by moving silver "futures contracts in a direction that was **favorable to the defendant and his co-conspirators at the Bank, to the detriment of other market participants**" and "**[t]he Defendant… (acted) in order to make money and avoid losses for himself, his co-conspirators, and the Bank.**" Ex. A at 10 (emphasis added).

In this case, Mr. Edmonds testified that during the relevant period he worked closely with his immediate supervisor, Michael Nowak. *See* Ex. B at 22:23–23:12. Mr. Nowak, Defendants' non-retained expert witness, oversaw the performance, risk, and trading strategies of Mr. Edmonds and his portfolio, which included silver futures. *See* Ex. B at 126:20–127:11. In addition, Edmonds booked silver trades for (Ex. B at 31:7-23, 32:24-33:10), sat next to (Ex. B at 27:23-28:4, 64:5-7), and circulated emails dictated by his mentor,[5] senior NY silver trader, Robert Gottlieb (Ex. B at 60:21-62:2, 63:5-64:4; 79:15-18). Based on the Plea Agreement, Mr. Edmonds appears to have been less than candid when he testified that he had no curiosity about Mr. Gottlieb's trading. Ex. B at 60:21-62:2.

"As a general rule, discovery should only be re-opened for good cause, depending on the diligence of the moving party." *Krawec v. Kiewit Constructors Inc.*, No. 11 Civ. 123 (LAP), 2013 WL 1104414, at *8 (S.D.N.Y. Mar. 1, 2013); Fed. R. Civ. P. 16(b)(4). In determining whether to re-open discovery, courts consider six factors: (1) whether trial is imminent; (2) whether the request is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the court; (5) the foreseeability of the need for additional discovery in light of the time allowed for discovery by the district court; and (6) the likelihood that the discovery will lead to relevant evidence. *See Lott v. CoreOne Techs., LLC*, No. 14 Civ. 5848 (CM), 2016 WL 462486, at *16 (S.D.N.Y. Feb. 2, 2016).

Plaintiffs satisfy all but prong 2 of this test.[6] Further, the sixth prong of this test is the most compelling because of the high likelihood of adducing evidence relevant to both the pending

---

just come in from 1:00 to 1:25 and care about where our spreads settled. That, to me, doesn't seem like hedging against silver forwards.").

[5] Robert Gottlieb was "somebody [he] looked up to in the business," who helped guide and train him. Ex. B at 154:11–155:5, 160:15-161:17.

[6] (1) There is no imminent trial date; (3) There should be no claim of prejudice – indeed Plaintiffs appear to be have been prejudiced by, at minimum, less than candid testimony from Mr. Edmonds and his colleagues; (4) Plaintiffs have diligently prosecuted this case and now bring this new information to the Court's attention within a week of it

Motions to Exclude Expert Testimony and to liability.  The recent admissions of Mr. Edmonds follow repeated denials by JP Morgan that this type of anticompetitive behavior was, or could have been, occurring.[7]  JP Morgan has challenged Plaintiffs' experts' opinions under Fed. R. Civ. Evid. 702, which requires, in part, that the expert testimony be based on sufficient facts or data; and that the opinions be reliably applied to the facts of the case.  *See* Fed. R. Civ. Evid. 702.  The facts asserted in the Plea Agreement directly support Plaintiffs' experts' opinions.

For instance, consistent with the Plea Agreement, Plaintiffs' expert, Dr. Santesteban, opined that JP Morgan's trading patterns created reputational barriers to entry, contrary to assertions by Defendants' expert Prof. Asker.  *See, e.g.,* ECF No. 229 at 8 n.13; ECF No. 227 at Section II.D.

Mr. Edmonds' admission that JP Morgan placed large orders (*e.g.*, 402 silver futures contracts) to move prices and without the intent to trade is also remarkably consistent with Plaintiff Shak's testimony that JP Morgan routinely offered 500 lots in the market at the close to move the market and without the intent to trade.[8]  According to Dr. Santesteban and Mr. Ruhs, this type of conduct signaled to other traders the incentive and ability to influence prices and created reputational barriers to entry.[9]  *See* Fed. R. Evid. 702; *see also* ECF No. 164 at Ex. 3 at 21-26, Ex. 5 at Section IV.B.

Given this new evidence, it is equitable to permit limited follow-on depositions from witnesses who may well now offer a varied version of the salient events given these developments.  These issues reach the heart of Plaintiffs' direct proof, expert opinions, and the pending motions.  For the foregoing reasons, Plaintiffs respectfully request permission to file a motion seeking further limited depositions of John Edmonds, Michael Nowak, and Robert Gottlieb.

---

becoming public; (5) the new evidence was unforeseeable; and (6) the evidence to be obtained from further discovery has direct bearing on, *inter alia*, the pending Motions to Exclude, as detailed *infra*.

[7] The credibility of JP Morgan's traders, including Mr. Edmonds, Mr. Nowak, and Mr. Gottlieb is now seriously in question, as well as the opinions of Defendants' experts, who have relied on that testimony.  *See* Ex. A at 10 ("The defendant learned this deceptive trading strategy from more senior traders at the Bank" with the "knowledge and consent of his immediate supervisors" to benefit Edmonds and "his co-conspirators at the Bank.").

[8] As Plaintiff Dan Shak testified: "[i]n my opinion, not primarily to trade but primarily to tell people, you know, get out of our way, we don't want to trade, we want these spreads to come in."  ECF No. 164 at Ex. 27 at 36:4-25, 147:19-148:19 ("…they used AC because he had a very loud voice and he would, you know, the major pieces he would say, 'I have 500 at, I have 500 at.'  And this wasn't even an attempt to do the trade, it was more of a, you know, get out of our way, you know, going to drive these things down.").  *Compare* ECF No. 164 at Ex. 27 at 147:19-154:4 *with* ECF No. 243 at 110:20-111:19.

[9] Dr. Santesteban's study showed that the fraction of bids placed that were then cancelled during the Affected Period influenced final settlement prices.  ECF No. 164 at Ex. 3 at ¶ 67.  Plaintiffs have alleged, and JP Morgan disputes, that the persistent use of this cancellation strategy not only created unfair profits for JP Morgan, but dis-incentivized potential entrants.  If potential entrants anticipated that they would face a firm with market power following entry, they would stay out or require additional compensation for entry.  The net result is to create the expectation that there would be reduced entry.  *See* ECF No. 164 at Ex. 3 at ¶¶ 49-53, 56, 70 n. 48, 72-77, Table 3.

**Kirby McInerney LLP**  Page 4
November 14, 2018

                                          Respectfully submitted,

                                          /s/ David E. Kovel
                                          David E. Kovel
                                          Karen M. Lerner
                                          Anthony E. Maneiro
                                          KIRBY McINERNEY LLP
                                          825 Third Avenue, 16th floor
                                          New York, New York 10022
                                          Telephone: (212) 371-6600
                                          Email: dkovel@kmllp.com
                                                       klerner@kmllp.com
                                                       amaneiro@kmllp.com

                                          *Counsel for Plaintiffs*

cc: All Counsel of Record (by Electronic Filing)